IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

LAWRENCE D. BRYAN,

                Plaintiff,

v.                                                         CIVIL ACTION NO. 2:05-0187

HARTFORD LIFE AND ACCIDENT
INSURANCE COMPANY, an insurance
company licensed in West Virginia,

                Defendant.

## MEMORANDUM OPINION AND ORDER

Currently pending before the Court are cross-motions for summary judgment regarding the denial of Plaintiff Lawrence D. Bryan's application for short-term disability benefits. Defendant is Hartford Life and Accident Insurance Company, which is the Claim Administrator for Plaintiff's employer, BB&T Corporation. Having reviewed the parties' submissions and the administrative record, the Court **DENIES** Plaintiff's motion for summary judgment and **GRANTS** Defendant's motion for summary judgment.

## I.
## STANDARD OF REVIEW

In order to obtain summary judgment under Rule 56(c) of the Federal Rules of Civil Procedure, the moving party must show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Here, the parties do not dispute the material facts contained in the administrative record. Accordingly, this case may be properly disposed of on summary judgment.

Under ERISA, courts must review an administrator's decision to deny pension plan benefits *de novo*, unless the plan itself confers discretionary authority upon the administrator "to determine eligibility for benefits or to construe the terms of the plan." *Firestone Tire and Rubber Co. v. Bruch,* 489 U.S. 101, 115 (1989). When an administrator possesses such discretion, courts may review the eligibility determination only for an abuse of discretion. *Id*; *Barron v. UNUM Life Ins. Co. of Am.*, 260 F.3d 310, 315 (4th Cir. 2001) (citation omitted). "Under the abuse of discretion standard, the plan administrator's decision is reasonable if it is the result of a deliberate, principled reasoning process and if it is supported by substantial evidence." *Bernstein v. CapitalCare, Inc.*, 70 F.3d 783, 788 (4th Cir.1995) (citation and internal quotation marks omitted). Here, the parties agree that the abuse of discretion standard applies.

## II.
## PROCEDURAL BACKGROUND

In this case, Plaintiff took extended sick leave from his job as a Vice-President of Credit Insurance with BB&T Insurance Services in Charleston, West Virginia, on July 15, 2004. His sick leave lasted until September 3, 2004, and he remained off work until March 7, 2005. In the meantime, on August 30, 2004, Plaintiff applied for short-term disability benefits. Defendant determined Plaintiff did not meet the definition of total disability under the terms of the policy and denied Plaintiff's claim on September 8, 2004.

In the denial letter, James P. Wiotkiewicz, a Senior Examiner, for Defendant wrote that:

> [t]he medical information received from your cardiologist, Dr[.] Haffar, advised that you have cardiomyopathies and that you were to have a sleep

-2-

> study for your sleep apnea. Disability benefits are only payable for an actual loss of function. The medical information provided indicated your heart condition was confirmed in a 2002 test, and the information provided does not explain what has changed that you now cannot perform your occupation. The information from your cardiologist actually suggests that you should not exert yourself until the results of your pending sleep study are reviewed. He notes you will have a follow-up visit in December of 2004. The information provided does not establish your current loss of function that would prevent you from working as an insurance officer. There are no noted changes in your chronic condition that is now preventing you[] from performing your occupation. Since your total disability is not supported, your claim has been denied and no benefits are payable.

*Letter from James P. Witkiewicz, Senior Examiner, to Lawrence D. Bryan* (September 8, 2004).

Plaintiff appealed this decision and submitted additional evidence, but his appeal was denied on February 28, 2005. Plaintiff then filed the current action and argues that the medical evidence supports his claim of total disability.

## III.
## FACTUAL BACKGROUND

Over two years before Plaintiff applied for disability benefits, he was diagnosed with non-ischemic cardiomyopathy probably caused by a viral infection. At the time, Plaintiff was fifty-seven years old, obese, and a heavy smoker. In clinical notes dated April 17, 2002, Plaintiff's treating physician, M. Yaser Haffar, M.D., stated that Plaintiff had no evidence of coronary artery disease, but had a left ventricular ejection fraction of 15%. Dr. Haffar, who is board certified in internal medicine and cardiology, gave a recorded statement on December 14, 2004, in which he explained that cardiomyopathy is a weakness in the heart muscle and it reduces the amount of blood

that is pumped from the heart with each cycle. Dr. Haffar stated that a normal heart pumps at about 60 to 65%, but in Plaintiff's case the blood was being circulated at 15 to 20%. Dr. Haffar said that this condition limits the flow of oxygen to the body and limits the activities one can do because of weakness and fatigue.

On July 31, 2002, and February 13, 2004, Dr. Haffar conducted echocardiograms on Plaintiff and estimated that his left ventricular ejection fraction had improved to about 30%. In his recorded statement, Dr. Haffar noted Plaintiff's improvement, but indicated that 30% still evidences significant weakness of the heart muscles. Dr. Haffar was then asked to review a job description, which apparently was written by Plaintiff, and Dr. Haffar opined that Plaintiff would not be able to do such a high stress level job and it could make Plaintiff's condition worse. Dr. Haffar stated that he believed Plaintiff was pushing himself to do these kinds of activities. Dr. Haffar opined that Plaintiff was not totally disabled, but that he would not be able to do all the job duties in the description given to him. Dr. Haffar said he believed Plaintiff could probably perform about 25 to 30% of this job responsibilities. Just prior to giving this recorded statement, Dr. Haffar's clinical notes dated December 6, 2004, indicate that Plaintiff was having problems with getting tired and short of breath. Plaintiff related to Dr. Haffar that he could no longer perform his job because of dyspnea on exertion and a fear of having a car accident.

Plaintiff also underwent a sleep study on September 11, 2004. In a letter dated September 17, 2004, Lo'ay Al-Asadi, M.D., who is board certified in sleep disorders, diagnosed Plaintiff with mild obstructive sleep apnea and recommended that Plaintiff either go for a C-PAP

titration sleep study or loose weight and be evaluated to determine if correcting his deviated septum will help him feel better. Dr. Al-Asadi referred him to Robert Pollard, M.D., an Otolaryngologist, to have an evaluation of his deviated septum. Dr. Pollard examined Plaintiff on October 11, 2004, and he wrote to Dr. Al-Asadi that he believed there would be no significant benefit to sleep apnea surgery. Dr. Pollard recommended weight loss and wearing a C-PAP mask.

Upon appeal, Defendant also sent Plaintiff's medical records to the Medical Advisory Group LLC, where they were reviewed by David S. Peters, M.D., who is board certified in family practice. In his report dated February 21, 2005, Dr. Peters states that he faxed additional questions to Dr. Haffar and Dr. Haffar responded. However, those questions and Dr. Haffar's responses were not included as part of the record in this case. Dr. Peters related that "Dr. Haffar indicated that there is no objective evidence that Mr. Bryan's condition has worsened since June 2004 and that his opinion is based on 'subjective' description of symptoms provided by Mr. Bryan." *Medical Report of Dr. Peters*, at 4 (Feb. 21, 2005). Based upon his review of the records and Dr. Haffar's responses, Dr. Peters opined "that the objective information does not support the claim that . . . [Plaintiff] is unable to perform the duties of his job[, and] . . . there has been no significant objective change in . . . [Plaintiff's] medical status that would now preclude his ability to perform the duties of his job." *Id.* at 5. After receiving Dr. Peters' report, Plaintiff's appeal was reviewed by Linda F. Wood, a "Specialist" with Defendant. Upon review of Dr. Peters' report and the other medical evidence submitted, Plaintiff's appeal was denied.[1]

---

[1]On January 20, 2005, the claim also was reviewed by Freida McSwain, a nurse clinician for Defendant, who wrote in a "Summary Detail Report" that "[t]here is no compelling medical info to (continued...)

## IV.
## DISCUSSION

Upon appeal to this Court, Plaintiff argues that he meets the definition of "total disability" as set forth in the policy. In relevant part, the policy provides:

> **Total Disability or Totally Disabled** means that you are prevented by:
>
> 1. accidental bodily injury;
> 2. sickness;
> 3. Mental Illness;
> 4. Substance Abuse; or
> 5. pregnancy,
>
> from performing the material duties of the occupation that you regularly perform for the Employer, and as a result, you are earning less than 20% of your pre-disability Weekly Earnings.

*Group Benefit Plan, BB&T Corporation, Short Term Disability* at 12. In support of his argument, Plaintiff asserts that Defendant erred by failing to explain why it considered the job description offered by BB&T as a Life Insurance Officer I rather than the job description he wrote. Plaintiff also insists that Defendant wrongly disregarded Dr. Haffar's opinion that Plaintiff's condition is permanent, rarely gets better, and progressively gets worse and that Dr. Haffar did not believe Plaintiff could perform all the duties in the job description Plaintiff provided him. However, the Court finds the fact Defendant relied upon the job description supplied by BB&T, rather than the one supplied by Plaintiff, is inconsequential in this case.

---

[1](...continued)
support EE's [employee's] inability to perform his job duties as there has been no change in medical status for +2 yrs and the severity of EE's symptoms are not concluded, but AP [attending physician] maintains that EE is not capable of performing jo[b] duties." *Freida McSwain's comments on Summary Detail Report*, in part, at 4 (Jan. 20, 2005).

Here, even the facts most favorable to Plaintiff demonstrate that there were no significant changes to Plaintiff's health from 2002 to 2004, when he ultimately applied for short-term disability benefits. Indeed, contrary to what Dr. Haffar said typically happens, Plaintiff's ejection fraction rate actually improved from 15 to 30% in 2002 and remained at 30% when Plaintiff was tested in 2004. Although Dr. Haffar believed Plaintiff was pushing himself to do his job, the fact of the matter is that Plaintiff was working from 2002 to 2004, irrespective of what job description Defendant applied in reviewing Plaintiff's claim. Additionally, the Court notes that, although Plaintiff's commission was less for the months he worked in 2004 as compared to 2003, Plaintiff's earnings for the months he worked in 2004 did not drop below 20% of his pre-disability weekly earnings, as expressly provided in the definition of "total disability" in the policy.[2] Plaintiff also was diagnosed with mild obstructive sleep apnea and excessive daytime somnolence in September of 2004, but Defendant considered these factors in making its decision on appeal.[3]

Therefore, given these facts, the Court cannot say that Defendant abused its discretion in denying Plaintiff's claim for short-term disability benefits. Clearly, Plaintiff does have a serious

---

[2]In August of 2004, Plaintiff complained to Dr. Haffar of fatigue, weakness, and mild dyspnea, but Dr. Haffar saw Plaintiff again on December 6, 2004, and wrote that Plaintiff "denied having any dyspnea on exertion, orthopnea or PND [paroxysmal nocturnal dyspnea]." *Medical Report of Dr. Haffar*, at 2 (Dec. 6, 2004). Curiously, Dr. Haffar also wrote in the same office note that Plaintiff said he can no longer perform his job because of dyspnea upon exertion. Therefore, given this inconsistency, the Court does not give weight to Dr. Haffar's statement that Plaintiff did not complain of having any dyspnea on exertion.

[3]Although Plaintiff apparently returned to work in March of 2005, he asserts he had to return to work in order to keep his health care benefits. The Court has no information regarding Plaintiff's medical status when he returned to work and, therefore, the Court will not consider the fact that Plaintiff was able to return to work in deciding whether Plaintiff was entitled to short-term disability benefits in the interim period.

heart condition, however, he has failed to show that his medical condition rendered him totally disabled under the terms of the policy because he continued to work from 2002 to 2004 under the same conditions that he now claims rendered him disabled. Thus, regardless of what definition of the job one adopts, Plaintiff demonstrated that he could perform the material duties of his job under these conditions without earning less than 20% of his pre-disability weekly earnings, as required under the policy. As a result, the Court finds Defendant did not abuse its discretion.

## V.
## CONCLUSION

Accordingly, the Court **DENIES** Plaintiff's motion for summary judgment, **GRANTS** Defendant's motion for summary judgment, and **DISMISSES** this case from the docket of the Court.

The Court **DIRECTS** the Clerk to send a copy of this written Opinion and Order to counsel of record and any unrepresented parties.

ENTER: December 2, 2005

ROBERT C. CHAMBERS
UNITED STATES DISTRICT JUDGE